**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**BROWARD DIVISION**

| | | |
|---|---|---|
| **MONTAE M. MITCHELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.:** _____ |
| | ) | |
| **YOUNG MEN'S CHRISTIAN** | ) | |
| **ASSOCIATION OF BROWARD** | ) | |
| **COUNTY, FLORIDA** | ) | |
| **INC. d/b/a YMCA,** | ) | **JURY DEMAND** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT WITH DEMAND FOR JURY TRIAL

**COMES NOW** Plaintiff, Montae M. Mitchell (hereinafter "Plaintiff"), by and through his undersigned counsel, and hereby files this lawsuit against Defendant, Yong Men's Christian Association of Broward County, Florida, Inc. (hereinafter "YMCA" or "Defendant"), and states as follows:

## JURISDICTION AND VENUE

1.     This is an action by Plaintiff, Montae M. Mitchell, for compensatory and punitive damages,  declaratory, and injunctive relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended ("Title VII"), 42 U.S.C. §§ 1981, 1983 (collectively "§ 1981"), and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.10 *et. seq.* to redress injury caused by Defendant's disparate treatment based on his race and retaliation against his protected conduct. This is also an action for compensatory and punitive damages, declaratory, and injunctive relief under Title VII, § 1981, the FWCA, and under Florida Tort Law.

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, Title VII, § 1981, and 28 U.S.C. § 1367. This Court has supplemental jurisdiction of the Florida Civil Rights Act Claims and any other state law claims pursuant to 28 U.S.C. § 1367. Declaratory, injunctive, legal and equitable relief is sought pursuant to the laws set forth above to include attorneys' fees, costs, and damages.

3.      Defendant employs at least fifteen (15) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the relevant calendar years.

4.      Venue is proper in the Broward Division of the Southern District of Florida (Broward County (28 U.S.C. § 89(c)), because Defendant does business in Broward County, and some or all of the acts alleged herein took place in Broward County.

5.      Defendant's principal place of business is in Broward County, and one of its locations is in Broward County, 501 SW 172nd Avenue, Pembroke Pines, Florida 33029  (the location where Plaintiff worked).

6.      Plaintiff currently resides in Miami Beach, Florida.

7.      All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

8.      On or about December 20, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 510-2020-01606. A true and correct copy of Plaintiff's charge is attached hereto as Exhibit "A".

9.      On or about January 28, 2020, the EEOC issued a Notice of Right to Sue letter to Plaintiff and suit has been commenced within ninety (90) days of receipt of the letter, a true and correct copy of which is included in Exhibit "B".

SALAS LAW FIRM, P.A.

## <u>GENERAL FACTUAL ALLEGATIONS</u>

10.     Plaintiff is a black male.

11.     Plaintiff is a former employee of Defendant.

12.     Plaintiff worked for Defendant at its Pembroke Pines location.

13.     Plaintiff's job title at the time of his termination was "Program Sports Director."

14.     Plaintiff was hired by Defendant in or about March 2015.

15.     Plaintiff worked for Defendant in the position of "Sports Coordinator" from his hire through December 2018.

16.     In December 2018, Defendant promoted Plaintiff to the position of Program Sports Director, for YMCA Pembroke Pines.

17.     Plaintiff's direct supervisor in 2019 was Karla Creque (female of Latin descent).

18.     Karla Creque's position was/is Senior Youth and Family Services Director for YMCA Pembroke Pines.

19.     Creque's supervisor was/is Gilbert Garcia (male of Latin descent).

20.     Garcia's position is Executive Director for YMCA Pembroke Pines.

21.     Garcia's supervisor was/is Ryan Smith (white male).

22.     Smith is the Vice President of Operations for YMCA South Florida.

23.     Prior to his promotion, Plaintiff excelled as Sports Coordinator for YMCA Pembroke Pines, including high praise during his during yearly performance evaluations as well as for his initiative in setting up an adult sports program.

24.     In late 2018, Creque suggested Plaintiff apply for Program Sports Director.

25.     Plaintiff excelled in his position of Program Sports Director, including being rated higher than other YMCA sports directors in terms of "variance."

SALAS LAW FIRM, P.A.

26.     Variance is a measure of year over year growth in revenue.

27.     Plaintiff's variance figure for 2019 was one-hundred-and-three percent (103%).

28.     YMCA sports directors are also rated and compared to other directors by effectiveness of their budget spending.

29.     Plaintiff excelled in his position of Program Sports director, including being rated higher than other YMCA sports directors in terms of budget.

30.     At least for YMCA South Florida, the YMCA "rates" its branches by "tier," labeling them either "D1, D2, or D3."

31.     D1 is considered the most favorably rating by the YMCA, with D3 as the least favorable.

32.     Each month, the YMCA rates its branches and provides that information to employees, like Plaintiff.

33.     In every month of 2019, YMCA South Florida rated its Pembroke Pines branch as "D1."

34.     In 2019, only YMCA Pembroke Pines, YMCA Westin, YMCA Hollywood, and YMCA South Dade were rated D1, while YMCA Homestead, YMCA LA Lee, YMCA Allapattah and YMCA Downtown Miami were rated D2.

35.     The Program Sports Directors of these YMCAs are as follows: YMCA Westin (Jeff Crowley (white male) and Matthew l/n/u (white male)); Hollywood (Chris Moltman (white male)); YMCA South Dade (John Tyson (black male)); YMCA Homestead (white female); YMCA LA Lee (unknown), YMCA Allapattah (Latin male), and YMCA Downtown Miami did not have a sports director in 2019 because it was a new branch.

SALAS LAW FIRM, P.A.

36.     Within YMCA South Florida D1 YMCAs, YMCA Pembroke Pines was rated No. 1 in terms of variance, above the other D1s.

37.     In January 2020, YMCA Pembroke Pines received the award for variance.

38.     For 2019, YMCA Pembroke Pines received the award for "best sports department" for YMCA South Florida.

39.     Plaintiff's budget was "in the black" by around $190,000 for 2019, better than other Sports Directors working for Defendant, including at least YMCA Hollywood and South Dade.

40.     Plaintiff's understanding is that he did better in terms of variance and revenue budget as compared with other Sports Directors working for other YMCAs of Defendant, including at least YMCA Hollywood, South Dade, La Lee, Allapattah, and Homestead.

41.     In 2019, Plaintiff set up interleague youth basketball with other YMCA branches, first YMCA Pembroke Pines and Westin, and then later Hollywood.

42.     Matthew Libby (white male), is the Executive Director at YMCA of South Florida.

43.     On October 4, 2019, at a meeting with Libby, Moltman, Tyson, Matthew l/n/u (interim sports director at time at Westin), Josilyn Lata, Jean Rittier, and Plaintiff in the gymnastics room at Hollywood YMCA, Plaintiff asked questions about and voiced concerns about YMCA sports association rules, particularly as it related to the interleague youth basketball Plaintiff was coordinating.

44.     During the meeting, the participants discussed the "rules" for interleague youth basketball and its referees, whether to implement from the "USA Basketball" rules and regulations piecemeal or verbatim.

45.    Plaintiff raised the issue of why exactly Defendant wanted to intertwine USA basketball rules with YMCA rules and/or the piecemeal approach, and why not simply adopt USA's Basketball rules in their entirety.

46.    Plaintiff raised the issue because it seemed easier and more efficient to adopt the USA rules verbatim, including because he thought it would make the referees' job easier.

47.    Soon after he raised the issue in the meeting, Plaintiff corrected Libby concerning whether USA Basketball had adopted a particular rule.

48.    In response, Libby exclaimed, "USA Basketball is doing it!"

49.    Plaintiff disagreed and the meeting proceeded.

50.    After the meeting, Plaintiff sent a screen shot to Libby showing that the rule in question was not part of USA Basketball's Rules, effectively demonstrating Plaintiff was correct.

51.    On October 7, 2019, Garcia issued Plaintiff a "written warning," on a YMCA disciplinary form.

52.    One of Defendant's reasons for the warning, Plaintiff was (allegedly) three minutes late to meeting on October 4, 2019, even though Plaintiff arrived at the office before the meeting and entered the meeting room before the meeting actually began.

53.    One of Defendant's reasons for the warning, Plaintiff (allegedly) failed to send an email to Creque per Garcia's direction on Friday October 4th, even though Garcia timely had the email and Plaintiff forwarded the email he had previously sent to Garcia, the next business day.

54.    One of Defendant's reasons for the warning, Plaintiff (allegedly) failed to put signs up outside of the building, even though it was known by Defendant's managers that the facilities department needed to drill holes in the walls before the signs could be affixed (and the holes had yet to be drilled which was Garcia's and Jose's l/n/u responsibilities).

SALAS LAW FIRM, P.A.

55. Plaintiff disputed the reasons for the discipline at the meeting, but it seemed no one from Defendant wanted to listen to the reasonable explanations by him.

56. This was the first warning or discipline Plaintiff had received while working for the YMCA.

57. Even though there was a possible first-step verbal warning, it was not utilized by Defendant in this first discipline of Plaintiff.

58. Interleague play was set to begin in late October.

59. Interleague play participants started signing up in September.

60. Many participants already had paid Defendant's registration fee ($129 to $149).

61. On October 10, 2019, Garcia called Plaintiff into a meeting with himself, Creque, and Smith.

62. Smith, loudly and upset, demanded to know whether Plaintiff would implement the rules change as directed, asking Plaintiff, "are you in or out!"

63. Plaintiff responded, "I'm obviously in," but that he did not agree with it.

64. Smith, raising his voice and upset, standing over the table where Plaintiff was seated, stated "you have the opportunity to resign! Do you want to resign?!"

65. Plaintiff, shocked at the loud question, responded that "no, he was going to do what they wanted," and that "he loved his job."

66. On October 13, 2019, at a meeting with Garcia, Moltman, Creque, and Plaintiff, the participants again discussed the proposed interleague rules.

67. Defendant's managers', including Creque, proposed a combination of YMCA Rules and USA Basketball Rules, combining certain rules.

68.     At the meeting, Moltman suggested that the YMCA avoid the confusion over a combined set of rules and adopt the USA Basketball Rules instead, including because the season was about to start, and Plaintiff agreed with Moltman at the meeting.

69.     Creque stated that Plaintiff was "trying to find loopholes" concerning implementing the rules, and the managers decided the season was set to begin with a combination of Rules.

70.     Moltman stated that he "was doing the same things as [Plaintiff] was doing" concerning getting the league ready to begin and dealing with the rules.

71.     Other employees of outside of Plaintiff's protected class, *i.e.* non-black persons, were treated more favorably than he including not being disciplined for similar issues (*e.g.* Plaintiff was disciplined for being three minutes late to work, whereas others like Lilian Grande (Latin female, Director of Health and Wellness) was not, even though she was late and more late than Plaintiff), and Matthew l/n/u (Westin Director) was twenty-minutes late for the October 4, 2019 meeting.

72.     Moltman, Grande, and Matthew l/n/u (and other similarly situated persons) were treated more favorably than Plaintiff in the terms and conditions of their employment regarding discipline.

73.     On October 15, 2019, Plaintiff complained to Jackie Roca (Director of Human Resources, YMCA South Florida) via email that he felt he was being discriminated against due to his race, stating:

> To whom it may concern, I am writing to make a formal complaint against the YMCA alleging race discrimination given my recent treatment by upper management, including what I consider discriminatory discipline from my direct supervisors and managers. After I voiced my concerns at a recent meeting about YMCA sports association rules, I feel I was unfairly singled out and treated less favorably than others including receiving my first ever discipline from the YMCA. I believe it is because I am a black and I am being discriminated against, motivated by my race.

SALAS LAW FIRM, P.A.

74.    The next day, Plaintiff received an email stating that Creque/Defendant wanted to set a meeting.

75.    The meeting was set for October 17, 2019, including being set in outlook.

76.    Plaintiff requested that the meeting be solely with HR.

77.    On October 17, 2019, Plaintiff went to speak to HR in the conference room as scheduled.

78.    Both Garcia and Creque were in the room when Plaintiff arrived, even though Plaintiff's understanding was that it was only with HR.

79.    Plaintiff reminded the room that he had asked to have the meeting solely with HR, but Roca said that "there are two sides to every story" and she insisted on having the conversation with Garcia and Creque in the room.

80.    Plaintiff reasserted his concern about their presence and continued the meeting.

81.    During the meeting Roca said Plaintiff had a lack of accountability and claimed that he was "not taking directives."

82.    Plaintiff disagreed.

83.    Then Roca said that it was best if the two sides "mutually separated."

84.    Plaintiff disagreed.

85.    Plaintiff then reiterated his email complaint of October 15, 2019, saying (paraphrasing) "I reached out to you for help, and I'm not being helped and am instead being terminated." Roca did not address my complaint and then told me I was terminated. It is my understanding that no investigation was conducted into my complaint of discrimination, other than to terminate me two days after complaining."

SALAS LAW FIRM, P.A.

86.    Plaintiff has sufficient evidence and/or will present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that his race was factor or a motivating factor(s) for Defendant's discriminatory and retaliatory termination.

87.    Defendant is or may be liable to Plaintiff under the "cat's paw" theory of vicarious liability and, to the extent necessary, alleges that it is so liable.

### Count I – Title VII Disparate Treatment (Race) – Discipline[1]

88.    Plaintiff realleges all of the preceding paragraphs of this complaint.

89.    Plaintiff has completed all necessary pre-requisites to bringing his claims under Title VII.

90.    Plaintiff is a member of a protected class, a racial minority, black.

91.    Plaintiff was qualified for his position.

92.    Plaintiff suffered an adverse employment action(s), formal discipline on October 4, 2019, which resulted in more formal or further discipline, including termination of employment.

93.    Plaintiff was replaced by a person(s) outside of his protected class; and/or similarly situated comparator employees, including those non-black persons named in the complaint, his replacement, and other non-black comparators presently unknown, were treated more favorably than he in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them (including regarding the false reason for termination, not taking directives) not resulting in termination of employment.

94.    Defendant intended to discriminate and did discriminate on the basis of race and/or Plaintiff's protected characteristic, black, was a motivator or motivating factor in Defendant's

---

[1] To the extent necessary, Plaintiff's claims herein are pled in the alternative.

SALAS LAW FIRM, P.A.

treatment of Plaintiff when it disciplined him and not similarly situated persons (e.g. Moltman, Grande, and Matthew l/n/u).

95.     Defendant's discrimination concerned one or more of the activities enumerated in Title VII.

96.     As a result of the aforementioned conduct, Defendant violated Title VII.

97.     Any purported legitimate reason for Plaintiff's discipline resulting in termination, given by Defendant is, in reality, a pretext for unlawful discriminatory treatment.

98.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered an adverse employment action by being disciplined resulting in further discipline (termination) and was damaged.

99.     Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

100.    Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on his race and/or that the violations of his rights were continuing in nature by Defendant.

101.    As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

## Count II – § 1981 Disparate Treatment (Race) – Discipline

102.    Plaintiff realleges and incorporates paragraphs 1-87 as if fully set forth herein.

103.    Plaintiff has completed all necessary pre-requisites to bringing his claims under 42 U.S.C. § 1981.

SALAS LAW FIRM, P.A.

104. Plaintiff is a member of a protected class, a racial minority, black.

105. Plaintiff was qualified for his position.

106. Plaintiff suffered an adverse employment action(s), formal discipline on October 4, 2019, which resulted in more formal or further discipline, including termination of employment.

107. Plaintiff was replaced by a person(s) outside of his protected class; and/or similarly situated comparator employees, including those non-black persons named in the complaint, his replacement, and other non-black comparators presently unknown, were treated more favorably than he in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them (including regarding the false reason for termination, not taking directives) not resulting in termination of employment.

108. Defendant intended to discriminate and did discriminate on the basis of race and/or Plaintiff's protected characteristic, black, was a motivator or motivating factor in Defendant's treatment of Plaintiff when it disciplined him and not similarly situated persons (e.g. Moltman, Grande, and Matthew l/n/u).

109. Defendant's discrimination concerned one or more of the activities enumerated in § 1981.

110. As a result of the aforementioned conduct, Defendant violated § 1981.

111. Any purported legitimate reason for Plaintiff's discipline resulting in termination, given by Defendant is, in reality, a pretext for unlawful discriminatory treatment.

112. As a direct and proximate result of Defendant's conduct, Plaintiff suffered an adverse employment action by being disciplined resulting in further discipline (termination) and was damaged.

SALAS LAW FIRM, P.A.

113. Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

114. Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on his race and/or that the violations of his rights were continuing in nature by Defendant.

115. As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

## Count III – FCRA Disparate Treatment (Race) – Discipline

116. Plaintiff realleges and incorporates paragraphs 1-87 as if fully set forth herein.

117. Plaintiff has completed all necessary pre-requisites to bringing his claims under the FCRA.

118. Plaintiff is a member of a protected class, a racial minority, black.

119. Plaintiff was qualified for his position.

120. Plaintiff suffered an adverse employment action(s), formal discipline on October 4, 2019, which resulted in more formal or further discipline, including termination of employment.

121. Plaintiff was replaced by a person(s) outside of his protected class; and/or similarly situated comparator employees, including those non-black persons named in the complaint, his replacement, and other non-black comparators presently unknown, were treated more favorably than he in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them (including regarding the false reason for termination, not taking directives) not resulting in termination of employment.

SALAS LAW FIRM, P.A.

122.    Defendant intended to discriminate and did discriminate on the basis of race and/or Plaintiff's protected characteristic, black, was a motivator or motivating factor in Defendant's treatment of Plaintiff when it disciplined him and not similarly situated persons (e.g. Moltman, Grande, and Matthew l/n/u).

123.    Defendant's discrimination concerned one or more of the activities enumerated in the FCRA.

124.    As a result of the aforementioned conduct, Defendant violated the FCRA.

125.    Any purported legitimate reason for Plaintiff's discipline resulting in termination, given by Defendant is, in reality, a pretext for unlawful discriminatory treatment.

126.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered an adverse employment action by being disciplined resulting in further discipline (termination) and was damaged.

127.    Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

128.    Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on his race and/or that the violations of his rights were continuing in nature by Defendant.

129.    As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count IV – Title VII (Failure to Investigate)

130.    Plaintiff realleges and incorporates paragraphs 1-87 as if fully set forth herein.

131. Plaintiff has completed all necessary pre-requisites to bring his claims under Title VII.

132. Plaintiff engaged in statutorily protected activities, complaining on October 15, 2019 of race discrimination via email to HR (Jackie Roca).

133. Plaintiff believed that his protected activity / complaint would be investigated by Defendant, including because it is Plaintiff's understanding this is the appropriate response by Defendant pursuant to its own policies.

134. Plaintiff suffered adverse employment action(s), Defendant's failure to investigate his complaint of discrimination, as well as his retaliatory termination two-days later.

135. There is or are a casual connection(s) between Plaintiff's complaint to Roca and Defendant's failure to investigate and its termination of Plaintiff days later.

136. Defendant intended to retaliate and did retaliate on the basis of race and/or because Plaintiff filed an internal complaint of race discrimination.

137. As a result of the aforementioned conduct, Defendant violated Title VII.

138. Any purported legitimate reason for non-investigating and/or its handling of Plaintiff's complaint and termination are, in reality, pretext(s) for unlawful retaliatory treatment

139. As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in Defendant's failure to investigate his claim and his retaliatory termination.

140. Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

141. Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on his race and/or that the violations of his rights were continuing in nature by Defendant.

SALAS LAW FIRM, P.A.

142.     As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

## Count V – Title VII Retaliation

143.     Plaintiff realleges and incorporates paragraphs 1-87 as if fully set forth herein.

144.     Plaintiff has completed all necessary pre-requisites to bringing his claims under Title VII.

145.     Plaintiff suffered adverse employment actions by receiving unfair, inaccurate, and disparate discipline in October 2019 through his termination, by not starting an investigation into his internal complaint about race discrimination on October 15, 2019 and/or by not handling Plaintiff's investigation in the same manner as other investigations (including by not having the initial meeting be attended by persons alleged to have taken discriminatory action, and/or by not being terminated at the initial meeting of a purported investigation with the complaining person).

146.     Plaintiff engaged in a statutorily protected activities, complaining to Roca about race discrimination on October 15, 2019.

147.     Defendant damaged and retaliated against Plaintiff in the terms and conditions of his employment, by disciplining him unfairly, unjustly, inaccurately, and inconsistently after he complained to Roca, by not conducting an investigation and by terminating his employment.

148.     There is or are a casual connection(s) between Plaintiff's complaints of disparate treatment in discipline and his termination.

149.     Any purported legitimate reason proffered by Defendant for Plaintiff's discipline and termination is, in reality, a pretext for its unlawful retaliation.

150.     As a result of the aforementioned conduct, Defendant violated Title VII.

SALAS LAW FIRM, P.A.

151. As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in discipline and termination after he complained, resulting in his suffering injury and being damaged.

152. Defendant has failed to comply with its statutory duty to take all reasonable, necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

153. Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of retaliation and/or that the violations of his rights were continuing in nature by Defendant.

154. As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

## Count VI – § 1981 Retaliation

155. Plaintiff realleges and incorporates paragraphs 1-87 as if fully set forth herein.

156. Plaintiff has completed all necessary pre-requisites to bringing his claims under § 1981.

157. Plaintiff suffered adverse employment actions by receiving unfair, inaccurate, and disparate discipline in October 2019 through his termination, by not starting an investigation into his internal complaint about race discrimination on October 15, 2019 and/or by not handling Plaintiff's investigation in the same manner as other investigations (including by not having the initial meeting be attended by persons alleged to have taken discriminatory action, and/or by not being terminated at the initial meeting of a purported investigation with the complaining person).

158. Plaintiff engaged in a statutorily protected activities, complaining to Roca about race discrimination on October 15, 2019.

SALAS LAW FIRM, P.A.

159.     Defendant damaged and retaliated against Plaintiff in the terms and conditions of his employment, by disciplining him unfairly, unjustly, inaccurately, and inconsistently after he complained to Roca, by not conducting an investigation and by terminating his employment.

160.     There is or are a casual connection(s) between Plaintiff's complaints of disparate treatment in discipline and his termination.

161.     Any purported legitimate reason proffered by Defendant for Plaintiff's discipline and termination is, in reality, a pretext for its unlawful retaliation.

162.     As a result of the aforementioned conduct, Defendant violated § 1981.

163.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in discipline and termination after he complained, resulting in his suffering injury and being damaged.

164.     Defendant has failed to comply with its statutory duty to take all reasonable, necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

165.     Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of retaliation and/or that the violations of his rights were continuing in nature by Defendant.

166.     As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count VII – FCRA Retaliation

167.     Plaintiff realleges and incorporates paragraphs 1-87 as if fully set forth herein.

168.     Plaintiff has completed all necessary pre-requisites to bringing his claims under the FCRA.

169.    Plaintiff suffered adverse employment actions by receiving unfair, inaccurate, and disparate discipline in October 2019 through his termination, by not starting an investigation into his internal complaint about race discrimination on October 15, 2019 and/or by not handling Plaintiff's investigation in the same manner as other investigations (including by not having the initial meeting be attended by persons alleged to have taken discriminatory action, and/or by not being terminated at the initial meeting of a purported investigation with the complaining person).

170.    Plaintiff engaged in a statutorily protected activities, complaining to Roca about race discrimination on October 15, 2019.

171.    Defendant damaged and retaliated against Plaintiff in the terms and conditions of his employment, by disciplining him unfairly, unjustly, inaccurately, and inconsistently after he complained to Roca, by not conducting an investigation and by terminating his employment.

172.    There is or are a casual connection(s) between Plaintiff's complaints of disparate treatment in discipline and his termination.

173.    Any purported legitimate reason proffered by Defendant for Plaintiff's discipline and termination is, in reality, a pretext for its unlawful retaliation.

174.    As a result of the aforementioned conduct, Defendant violated the FCRA.

175.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in discipline and termination after he complained, resulting in his suffering injury and being damaged.

176.    Defendant has failed to comply with its statutory duty to take all reasonable, necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

SALAS LAW FIRM, P.A.

177. Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of retaliation and/or that the violations of his rights were continuing in nature by Defendant.

178. As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Grant a permanent injunction enjoining Defendant its officers, successors, assigns and all persons in active concert or participation with it, from engaging in discriminatory and retaliatory practices in violation of the law, as well as appropriately fashioned equitable relief aimed at preventing future discrimination and retaliation;

(b) Award Plaintiff judgment against Defendant for compensatory damages as determined by the trier of fact;

(c) Award Plaintiff all restitution and other damages, including pre- and post-judgment interest, for the benefits he would have received absent the retaliatory treatment;

(d) Enter judgment for punitive damages against Defendant; and,

(e) Award all reasonable attorneys' fees and costs incurred in connection with this action; and any other further relief as justice may require.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

SALAS LAW FIRM, P.A.

Respectfully submitted this 8th day of April, 2020.

//s//<u>Michael G. Green II, Esq.</u>
SALAS LAW FIRM, P.A.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Office: (954) 315-1155
Fax: (954) 452 -3311
Email:  michael@jpsalaslaw.com
Fla. Bar. No. 60859

//s//<u>John P. Salas, Esq.</u>
SALAS LAW FIRM, P.A.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Office: (954) 315-1155
Fax: (954) 452 -3311
Email: jp@jpsalaslaw.com
Fla. Bar. No. 87593